IN UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANGELIQUE WILLIAMS,

Plaintiff,

v. Case No. 8:23-cv-1203

THE GOODMAN GROUP, LLC, a foreign limited liability company and ABLE PALMS HOME & HEALTH CARE SERVICES, INC., a foreign profit corporation,

Defendants.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff ANGELIQUE WILLIAMS ("Plaintiff" or "Williams") sues Defendants, THE GOODMAN GROUP, LLC, ("Goodman Group"), and ABLE PALMS HOME & HEALTH CARE SERVICES, INC., ("Able Palms"), (herein collectively "Defendants"), and states as follows:

**CAUSES OF ACTION**

1. This is an action religious discrimination, failure to accommodate, and retaliation under the Florida Civil Rights Act., Fla. Stat. § 760.01 et seq. (FCRA) and Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e et seq.

**PARTIES; DEFENDANTS' EMPLOYMENT OF PLAINTIFF**

2. Plaintiff is an individual who currently resides in Pinellas County, Florida.

3. Defendant Goodman Group is a Minnesota limited liability company with its principal place of business located in Chaska, Minnesota.

4. Defendant Able Palms is a Minnesota profit corporation with its principal place of business located in Chaska, Minnesota. In Florida, it is also the registrant of the fictitious name "Able Care Connect Home Health".

5. At all times material to this Complaint, Plaintiff was employed by Defendants Able Palms and Goodman Group.

6. Defendants are single employer/integrated enterprise, joint employers, and/or agents of the other concerning employment matters such that both are considered Plaintiff's "employer" for the purposes of the causes of action raised herein. See *Peppers v. Cobb Cnty.*, 835 F.3d 1289, 1298 (11th Cir. 2016), quoting *Lyes v. City of Riviera Beach*, 166 F.3d 1332, 1341 (11th Cir. 1999) (explaining three tests under which multiple entities are aggregated under Title VII and related employment discrimination laws).

7. On information and belief, both Defendants share common ownership; however, this is impossible or impracticable for Plaintiff to determine at the pleading stage from available information due to the Defendants' use of shell and management companies. Able Palms' president, Craig Edinger, is also the manager of Goodman Group.

8. Plaintiff became employed to work at Defendants' facilities known as "The Palms of Largo" as a Lead Physical Therapist Assistant in August 2019. Plaintiff performed worked at the facilities located in and around 200, 300, and 400 Lake Ave

NE in Largo, Florida. The Palms of Largo is a campus of independent living, assisted living, memory care, rehabilitation, and health care facilities combined with other amenities that are commonly owned and operated to provide what Defendants and their affiliates refer to as "one of the most unique and exceptional senior living, health care, and residential campuses in the nation."

9. Able Palms d/b/a Able Care Connect Home Health is held out on The Palms of Largo's website as a "Medicare certified home health agency licensed by the State of Florida to provide both skilled nursing and private duty services to seniors in their homes." Able Palms is held out by The Palms of Largo as a service integral to the community.

10. According to the Florida Secretary of State Division of Corporations, "The Palms of Largo" is a fictitious name registered by a number of holding companies—including Regal Palms Limited Partnership, MN Medinvest Company Limited Partnership, Imperial Palms West Apartments Limited Partnership, Imperial Palms Apartments Limited Partnership, and POL Services Limited Partnership. According to the Pinellas County Property Appraiser's Records, Imperial Palms West Apartments Limited Partnership is the owner of 221 Lake Ave. NE., and Medinvest Company Limited Partnership is the owner of 400 Lake Ave. NE. These companies all share the same principal address (1107 Hazeltine Blvd., Suite 200, Chaska, MN 55318), mailing address (same), and registered agent (NRAI Services, Inc., 1200 South Pine Island Road, Plantation, FL 33324) as the Defendants. On information and

belief, all of the above-named entities are commonly owned and managed with Defendants in furtherance of operating The Palms of Largo.

11. The Palms of Largo is commonly owned, managed, and operated by both Defendants and their parents or affiliates.

12. Both Defendants are highly integrated with respect to operations of The Palms of Largo.

13. Defendants contract with each other and The Palms of Largo for the performance of various tasks and retain substantial control over the terms and conditions of employment, including Plaintiff's employment.

14. Moreover, Able Palms delegated to Goodman Group control of traditional rights over employees such that Goodman Group acted as an agent of Able Palms and was treated as an employer of Plaintiff and other employees operating at The Palms of Largo.

15. Goodman Group directly employs almost all of the staff at the facility—around 90% of the approximately hundred staff members there. Able Palms was a small unit within the facility that directly employed about fifteen staff members providing skilled nursing and rehabilitation therapy services. Able Palms worked with Goodman Group's patients in the facility, and Goodman Group exercised significant control over Able Palms' employees in the facility.

16. For example, during Plaintiff's hiring process, she was interviewed by Mark Miklos, Executive Director of Able Palms, but was then directed to Goodman

Group's Human Resources for processing as a new hire, including for payroll and other employment matters.

17. Defendants' employees worked in the The Palms of Largo facilities and were subject to their rules and procedures, including but not limited to rules regarding the wearing of personal protective equipment (PPE) such as masks, inoculation, punching in and out of the timeclock, use of breakrooms and other common areas like the cafeteria, employee safety, dress code, and interacting with and fraternizing with other people in the facility.

18. Defendants trained Plaintiff and other employees, and expected them, to observe, report, and respond to conditions of the facilities and of patients.

19. Defendants controlled how staff such as Plaintiff would fill out patients' charts and paperwork in conformity with their and The Palms of Largo's procedures, which were as detailed as requiring to know when Plaintiff was seeing the patient next.

20. Defendants exercised substantial control over employee mask and vaccination requirements for Plaintiff and other employees in the facilities, including mandatory testing procedures requiring employees like Plaintiff to show up at specific times at the facilities for testing.

21. Plaintiff's primary contact for HR matters was Robin Nellis of Goodman Group. Goodman Group's national director of human resources, Heather Backlund, also exercised control of the terms and conditions of Plaintiff's employment.

22. Both Defendants demonstrated an interrelation of operations, common management, and control of labor relations to the point where the entities have been

nearly indistinguishable to employees, including Plaintiff, who would treat Goodman Group as a "corporate" office with control over Able Palms local. If Able Palms' employees had questions, they were required to contact Goodman Group's human resources staff.

**JURISDICTION AND VENUE**

23. Subject matter Jurisdiction is proper in this Court under 28 U.S.C. §§ 1331 and 29 U.S.C. §216 (b) because this action involves a federal question under the Title VII. Jurisdiction over the state law claims set forth herein is proper pursuant to this Court's supplemental jurisdiction under 28 U.S.C. § 1367 because the state claw claims form the same case or controversy and arise from the same operative facts.

24. Personal jurisdiction and venue are proper in the United States District Court for the Middle District of Florida because at all times material, Defendants resided in and/or conducted business in, and significant events giving rise to Plaintiff's claims occurred within, the Florida counties comprising the U.S. District Court, Middle District of Florida.

25. Venue is proper in the Tampa Division under Local Rule 1.02(b)(5) since the action accrued in Pinellas County, Florida over which the Tampa Division has jurisdiction.

26. On June 8, 2022, Plaintiff filed Charges of Discrimination against Defendants in the Equal Employment Opportunity Commission (EEOC), the Florida Commission on Human Relations (FCHR), and the Pinellas Office of Human Rights (POHR). On February 15, 2023, the POHR determined issued a cause determination

that unlawful discrimination and retaliation have occurred. On March 2, 2023, the EEOC issued a Notice of Right to Sue concerning each Charge, finding reasonable cause to believe that violations occurred. The FCHR failed to make any determination or take any action with the Charges within 180 days.

27. All conditions precedent to maintaining this action have occurred, been performed, are excused, waived, and/or futile.

## GENERAL ALLEGATIONS

28. Plaintiff began working for Defendants at the The Palms of Largo as a Lead Physical Therapist Assistant in August 2019.

29. Plaintiff is a non-denominational Christian.

30. In late 2021, the Defendants began asserting that they would mandate that all staff receive Covid-19 vaccines as a condition of employment.

31. Defendants claimed the vaccination requirement was due to guidelines established by the Center for Medicare Services (CMS).

32. On November 8, 2021, with the assistance of her pastor, Plaintiff requested a religious exemption for vaccinations via a written letter. As a member of the Living Grace Church, Plaintiff requested an exemption from vaccination on the basis that it conflicted with the free exercise and observance of her religious beliefs and practices, citing 1 Corinthians 6:19-20 and rejecting the injection of "vaccines that contain neurotoxins, animal parts, foreign DNA from elective aborted fetuses, albumin from human blood, carcinogens, and chemical waste, or any other foreign

substance of any kind". The letter explaining that the forced vaccination would violate her deeply held religious beliefs was signed by both Plaintiff and her pastor.

33. In December 2021, Plaintiff discussed the letter and her request for religious accommodation with Defendants Executive Director, Mark Miklos, primarily via text message. Miklos told Plaintiff the response to her request would probably "be a very last second decision . . . it will be what it will be."

34. When Miklos reported in about what he described as a Supreme Court decision concerning the vaccine mandate for medical workers, Plaintiff noted that the article about the opinion also pointed out that religious accommodations are still required under law. When Plaintiff requested that Miklos find out more about that to process her request, he responded "No further news to share. I have provided the details I have right now."

35. Plaintiff became concerned that Miklos' statements made it seem like, from his perspective, the vaccine "mandate" did not require reasonable accommodations for religious persons. Plaintiff continued to request updates on her accommodation request and kept being told by Defendants that they are not sure when a decision would be made.

36. On January 17, 2022, Plaintiff spoke with Robin Nellis, Defendants' HR Director. During the meeting, the two reviewed an accommodation questionnaire. Nellis was provided the letter from Plaintiff's pastor. During this meeting, Nellis disrespectfully interrogated Plaintiff in a hostile manner, trying to second guess the nature of Plaintiff's request and badgering her with questions about whether she has

ever taken Tylenol. Instead of conducting the meeting as an interactive process, Nellis made Plaintiff feel as if she underwent a hostile cross examination.

37. The same day as the interview with Nellis, Plaintiff received a text message from Defendants stating she needed to receive the Covid-19 vaccine by January 29, 2022, or be terminated.

38. On January 27, 2022, Miklos delivered a formal letter to Plaintiff explaining that Defendants were "unable to provide [her] with an accommodation in the form of a vaccine exemption at this time" and that she must obtain a Covid-19 vaccination shot or series of shots in order to retain her employment. This letter was handed to Plaintiff during a face-to-face meeting with Miklos where Miklos explained that Plaintiff has face-to-face and hands-on interactions with patients and that Defendants needed to comply with the CMS vaccine mandate. Plaintiff was advised to send letters to Nellis and another HR representative named Heather Backlund requesting each of them to review and reconsider the request for religious accommodation.

39. Plaintiff sent Nellis and Backlund each an email on January 28, 2022 explaining that she worked for approximately ten different home health companies, each of which have been able to accommodate her religion regarding the Covid-19 vaccine. Plaintiff proposed alternative accommodations of weekly testing and the wearing of personal protective equipment including mask and gloves at all times at Plaintiff's expense.

40. On February 4, 2022, Backlund sent Plaintiff an email denying the request for accommodations. Backlund noted that Defendants did not challenge the sincerity of Plaintiff's beliefs but that they were "tasked with ensuring all of [their] employees are vaccinated under CMS's rule, and it needs only to grant religious or medical exemptions if they do not cause and undue burden or hardship." Backlund went on to effectively state that it would not allow any direct-care workers to be vaccinated, citing in pertinent part the "cost of provision and enforcement of use of PPE and testing" even though Plaintiff offered to provide her own PPE and testing at her own expense. Backlund concluded the message by inviting Plaintiff to contact Miklos should she decide to obtain the vaccine.

41. Out of desperation to keep her job, on February 7, 2022, Plaintiff sent an email to Backlund inquiring whether, if she got the vaccine, the Defendants would provide in writing that her position would be reinstated. She also left a voicemail making the same inquiry.

42. In reply to Plaintiff's inquiry, Defendants stated that if Plaintiff received the vaccination she would only be seeing about one-third of her typical patient load. Because Plaintiff is paid based on the number of visits and billable services, this would be a significant decrease in compensation for no reason other than Plaintiff had made a religious accommodation request.

43. On February 14, 2022, Nellis called asking Plaintiff if she decided to get the vaccine and requesting that she return the Defendants' computer they had previously issued her. Plaintiff, consistent with her religious beliefs, exercise, and

practice, continued to request accommodation regarding the vaccine requirement. She returned the computer on February 21.

44. Having been separated from her employment with Defendants, Plaintiff was still able to perform services as a contractor in Defendants' facilities despite being unvaccinated. This was consistent with Plaintiff's experience of functioning as a contractor at up to ten other similar facilities, all of which granted her accommodation requests to be exempt from vaccination.

45. As early as February 25, 2022 up through the present, Plaintiff still routinely visits and treats patients in Defendants' facilities as a contractor. She has only been required to wear a mask—not provide proof of vaccination.

46. Defendants' reasoning for denying the accommodation request—that it was complying with the CMS vaccine mandate—is merely pretext for its intent to discriminate against Plaintiff for her religion and for exercising rights to request reasonable accommodations.

47. The definition of "staff" under the CMS vaccine mandate is not solely limited to W-2 employees—it is intended to cover individuals visiting the facility on a contract or other basis as well. Center for Medicare Services, Do the CMS staff vaccination requirements apply to my facility? (available at: https://www.cms.gov/files/document/covid-19-health-care-staff-vaccination-requirements-decision-tree-graphic.pdf) (Decision tree showing that the "Staff Vaccination Requirements Apply" to contractors and other types of staff if transition

between facilities; also notes below that some staff may be granted exemptions from the vaccine).

48. The federal regulations from CMS further clarify who falls under the definition of "staff" to include non-employed individuals as follows:

> **In addition to facility-employed personnel, many facilities have services provided on-site on a regular basis by individuals under contract or arrangement, including** hospice and dialysis staff, **physical therapists**, occupational therapists, mental health professionals, or volunteers. **Any of these individuals who provide services on-site at least weekly would be included in "staff" who must be educated and offered the vaccine as it becomes available.**

86 Fed. Reg. 26314 (May 13,2021) (available at:

https://www.govinfo.gov/content/pkg/FR-2021-05-13/pdf/2021-10122.pdf)

**(emphasis added)**

49. CMS continued to clarify the applicability of vaccine requirements to contract staff regardless of frequency, as follows:

> **Each facility's COVID-19 vaccination policies and procedures must apply to the following facility staff, regardless of clinical responsibility or patient contact and including all current staff as well as any new staff, who provide any care, treatment, or other services for the facility and/or its patients**: Facility employees; **licensed practitioners**; students, trainees, and volunteers; **and individuals who provide care, treatment, or other services for the facility and/or its patients, under contract or other arrangement**. . . **We considered excluding individual staff members who are present at the site of care less frequently than once per week from these vaccination requirements, but were concerned that this might lead to confusion or fragmented care. Therefore, any individual that performs their duties at any site of care, or has the potential to have contact with anyone at the site of care, including staff or patients, must be fully vaccinated[.]**

86 Fed. Reg. 61570-71 (Nov. 5, 2021) (available at: https://www.govinfo.gov/content/pkg/FR-2021-11-05/pdf/2021-23831.pdf) (**emphasis added**). The same document recognizes that, notwithstanding the vaccination rules, some individuals may be eligible for exemptions "under existing Federal law" including under the basis of "religious beliefs, observances, or practices" protected under Title VII, and that "**Employers must also follow Federal laws protecting employees from retaliation for requesting an exemption on account of religious belief**". *Id*. at 61572 (**emphasis added**). In order to protect individuals' rights to exemption, CMS "decided to establish minimal compliance burdens for both [religious and medical contraindications] categories of exemptions" that may be "revisited should an abuse problem arise on a significant scale." *Id.* at 61614.

50. CMS made more materials addressing the definition of "staff" available in Plain English. See e.g., Center for Medicare Services, Omnibus COVID-19 Health Care Staff Vaccination Interim Final Rule with Comment at p. 7 (available at https://www.cms.gov/files/document/covid-19-health-care-staff-vaccination-ifc-6-national-stakeholder-call-slides.pdf) (explaining that vaccination requirement applied to all "Licensed Practitioners" and "Contracted Staff" regardless of whether they were employees; also describing on page 9, et seq., how facilities must develop a process for permitting staff to request a religious exemption); see also See Center for Medicare Services, Center for Clinical Standards and Quality/Quality, Safety & Oversight Group: Guidance for the Interim Final Rule – Medicare and Medicaid Programs;

Omnibus COVID-19 Health Care Staff Vaccination (Dec. 28, 2021) (available at https://www.cms.gov/files/document/qso-22-07-all.pdf) (CMS's vaccination requirements "must comply with applicable federal non-discrimination and civil rights laws and protections, **including providing reasonable accommodations to individuals who are legally entitled to them because they have** a disability or **sincerely held religious beliefs, practices, or observations that conflict with the vaccination requirement**.") **(emphasis added)**

51. Defendants' proffered reasoning of compliance with the CMS vaccine rules is merely pretext for the denial of Plaintiff's accommodation request and the discriminatory and retaliatory reduction of hours and subsequent firing of Plaintiff, who continues to visit patients as a contractor under other arrangements with Defendants' facilities and engage in direct care of patients without being required to provide proof of vaccination.

52. Plaintiff has had to retain the undersigned counsel to bring the instant action and will incur attorney's fees for said representation.

**COUNT I – TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
*(TITLE VII – Failure to Accommodate)*

53. Plaintiff realleges and adopts, as if fully set forth in Count I, the allegations in paragraphs 1 through 52.

54. At all times material Plaintiff was qualified to perform the essential job functions of her position with Defendants.

55. Defendants did not challenge the quality of Plaintiff's work.

56. At all times material Plaintiff had and continues to have a sincerely-held religious belief,as a non-denominational Christian and citing 1 Corinthians 6:19-20, to reject the injection of "vaccines that contain neurotoxins, animal parts, foreign DNA from elective aborted fetuses, albumin from human blood, carcinogens, and chemical waste, or any other foreign substance of any kind" consistent with the letter she provided to Defendants that was signed by her pastor.

57. Defendants did not challenge the sincerity of Plaintiff's belief.

58. Defendants demanded that Plaintiff receive one or more Covid-19 vaccine injections as a condition of her employment.

59. Plaintiff requested reasonable accommodations from Defendants to be exempt from vaccination, offering increased testing and PPE at her expense as an alternative.

60. Defendants unreasonably denied Plaintiff's request for pretextual reasons.

61. At all relevant times, Plaintiff was qualified to perform the essential duties of the position with the requested reasonable accommodation.

62. All accommodations that Plaintiff requested were reasonable.

63. None of the accommodations that Plaintiff requested would have created undue hardship for Defendants.

64. Defendants discriminated against Plaintiff in violation of Title VII by refusing to accommodate her religion.

65. Defendants knowingly and intentionally discriminated against Plaintiff because of her religion

66. Defendants are liable for the acts and omissions of its agents and employees.

67. Plaintiff suffered injuries, damages, and losses as a result of Defendants' failure to reasonably accommodate her religion.

68. Defendants' failure to accommodate Plaintiff's religious accommodation was the direct and proximate cause of Plaintiff's injuries, damages, and losses.

69. Defendants acted with malice or reckless indifference to Plaintiff's federally protected rights under Title VII when it refused to provide a reasonable accommodation.

**COUNT II – TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
*(TITLE VII – Discrimination)*

70. Plaintiff realleges and adopts, as if fully set forth in Count II, the allegations in paragraphs 1 through 52 and 53 through 69.

71. Defendants discriminated against Plaintiff on the basis of her religion in violation of Title VII by drastically cutting the amount of patients she was able to see to approximately one-third the prior amount and, as a result, diminished her compensation and materially altered the terms and conditions of her employment.

72. Defendants further discriminated against Plaintiff on the basis of her religion in violation of Title VII by terminating her employment for pretextual reasons.

73. Defendants knowingly and intentionally discriminated against Plaintiff because of her religious beliefs.

74. Defendants are liable for the acts and omissions of their agents and employees. Defendants, either directly or by and through its agents, discriminated against Plaintiff and caused her injuries, damages, and losses.

75. Plaintiff suffered injuries as a result of Defendants' wrongful acts and omissions.

76. Defendants' diminution of patient visits and ultimate termination of Plaintiff was the direct and proximate cause of Plaintiff's injuries, damages, and losses.

77. Defendants acted with malice or reckless indifference to Plaintiff's federally protected rights under Title VII when it diminished the number of Plaintiff's patient visits and terminated her employment.

**COUNT III – TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
*(TITLE VII – Retaliation)*

78. Plaintiff realleges and adopts, as if fully set forth in Count III, the allegations in paragraphs 1 through 52 and 53 through 69.

79. Plaintiff engaged in protected activity when she sought reasonable accommodations on the basis of her religion.

80. As a direct result of Plaintiff's request for a reasonable accommodation, Defendant retaliated against Plaintiff by drastically cutting the amount of patients she was able to see to approximately one-third the prior amount and, as a result,

diminished her compensation and materially altered the terms and conditions of her employment.

81. Defendants further retaliated against Plaintiff by terminating her employment for pretextual reasons.

82. Defendants knowingly and intentionally retaliated against Plaintiff because of her protected activity.

83. Defendants are liable for the acts and omissions of its agents and employees. Defendants, either directly or by and through their agents, retaliated against Plaintiff and caused her injuries, damages, and losses.

84. Plaintiff suffered injuries as a result of Defendants' retaliatory conduct.

85. Defendants' retaliatory conduct was the direct and proximate cause of Plaintiff's injuries, damages, and losses.

86. Defendants acted with malice or reckless indifference to Plaintiff's federally protected rights under Title VII.

**COUNT IV – FLORIDA CIVIL RIGHTS ACT**
*(FCRA – Failure to Accommodate)*

87. Plaintiff realleges and adopts, as if fully set forth in Count IV, the allegations in paragraphs 1 through 52.

88. At all times material Plaintiff was qualified to perform the essential job functions of her position with Defendants.

89. Defendants did not challenge the quality of Plaintiff's work.

90. At all times material Plaintiff had and continues to have a sincerely-held religious belief, as a non-denominational Christian and citing 1 Corinthians 6:19-20, to reject the injection of "vaccines that contain neurotoxins, animal parts, foreign DNA from elective aborted fetuses, albumin from human blood, carcinogens, and chemical waste, or any other foreign substance of any kind" consistent with the letter she provided to Defendants that was signed by her pastor.

91. Defendants did not challenge the sincerity of Plaintiff's belief.

92. Defendants demanded that Plaintiff receive one or more Covid-19 vaccine injections as a condition of her employment.

93. Plaintiff requested reasonable accommodations from Defendants to be exempt from vaccination, offering increased testing and PPE at her expense as an alternative.

94. Defendants unreasonably denied Plaintiff's request for pretextual reasons.

95. At all relevant times, Plaintiff was qualified to perform the essential duties of the position with the requested reasonable accommodation.

96. All accommodations that Plaintiff requested were reasonable.

97. None of the accommodations that Plaintiff requested would have created undue hardship for Defendants.

98. Defendants discriminated against Plaintiff in violation of the FCRA by refusing to accommodate her religion.

99. Defendants knowingly and intentionally discriminated against Plaintiff because of her religion

100. Defendants are liable for the acts and omissions of its agents and employees.

101. Plaintiff suffered injuries, damages, and losses as a result of Defendants' failure to reasonably accommodate her religion.

102. Defendants' failure to accommodate Plaintiff's religious accommodation was the direct and proximate cause of Plaintiff's injuries, damages, and losses.

103. Defendants acted with malice or reckless indifference to Plaintiff's protected rights under the FCRA when it refused to provide a reasonable accommodation.

**COUNT V – FLORIDA CIVIL RIGHTS ACT**
*(FCRA – Discrimination)*

104. Plaintiff realleges and adopts, as if fully set forth in Count I, the allegations in paragraphs 1 through 52 and 87 through 103.

105. Defendants discriminated against Plaintiff on the basis of her religion in violation of the FCRA by drastically cutting the amount of patients she was able to see to approximately one-third the prior amount and, as a result, diminished her compensation and materially altered the terms and conditions of her employment.

106. Defendants further discriminated against Plaintiff on the basis of her religion in violation of the FCRA by terminating her employment for pretextual reasons.

107. Defendants knowingly and intentionally discriminated against Plaintiff because of her religious beliefs.

108. Defendants are liable for the acts and omissions of their agents and employees. Defendants, either directly or by and through its agents, discriminated against Plaintiff and caused her injuries, damages, and losses.

109. Plaintiff suffered injuries as a result of Defendants' wrongful acts and omissions.

110. Defendants' diminution of patient visits and ultimate termination of Plaintiff was the direct and proximate cause of Plaintiff's injuries, damages, and losses.

111. Defendants acted with malice or reckless indifference to Plaintiff's federally protected rights under the FCRA when it diminished the number of Plaintiff's patient visits and terminated her employment.

**COUNT VI – FLORIDA CIVIL RIGHTS ACT**
*(FCRA – Retaliation)*

112. Plaintiff realleges and adopts, as if fully set forth in Count I, the allegations in paragraphs 1 through 52 and 87 through 103.

113. Plaintiff engaged in protected activity when she sought reasonable accommodations on the basis of her religion.

114. As a direct result of Plaintiff's request for a reasonable accommodation, Defendants retaliated against Plaintiff by drastically cutting the amount of patients she was able to see to approximately one-third the prior amount and, as a result,

diminished her compensation and materially altered the terms and conditions of her employment.

115. Defendants further retaliated against Plaintiff by terminating her employment for pretextual reasons.

116. Defendants knowingly and intentionally retaliated against Plaintiff because of her protected activity.

117. Defendants are liable for the acts and omissions of its agents and employees. Defendants, either directly or by and through their agents, retaliated against Plaintiff and caused her injuries, damages, and losses.

118. Plaintiff suffered injuries as a result of Defendants' retaliatory conduct.

119. Defendants' retaliatory conduct was the direct and proximate cause of Plaintiff's injuries, damages, and losses.

120. Defendants acted with malice or reckless indifference to Plaintiff's federally protected rights under the FCRA.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor against Defendants, and grant:

a) Appropriate declaratory and other injunctive and/or equitable relief, including but not limited to reinstatement or back pay and front pay in lieu of reinstatement to the extent reinstatement is not feasible;

b) Compensatory and consequential damages, including damages for mental anguish and emotional distress, including but not limited to

depression, loss of dignity, humiliation, embarrassment, stress, anxiety, loss of self-esteem and self-confidence, emotional pain, and other intangible injuries on all claims allowed by law in an amount to be determined at trial;

c) All economic losses on all claims allowed by law;

d) Punitive damages on all claims allowed by law in an amount to be determined at trial;

e) Pre- and post-judgment interest at the lawful rate;

f) Attorney's fees and costs of suit;

g) Any further relief that this court deems just and proper, and any other relief as allowed by law.

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b) and the Seventh Amendment to the United States, a demand a trial by jury as to all issues triable as of right.

Dated this 31st day of May 2023.

Respectfully submitted,

***s/ Brian Calciano***
BRIAN CALCIANO
Florida Bar No. 108879
*Trial Counsel for Plaintiff*

**CALCIANO PIERRO, PLLC**
146 Second Street North – Suite 304
St. Petersburg, Florida 33701
(727) 201-2573 | (727) 491-7072 – Fax
brian@flemploymentlaw.com